2026 IL App (1st) 252167-U

FIRST DISTRICT,
SIXTH DIVISION
May 29, 2026

No. 1-25-2167

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| DEMETRIOS J. GIOKARIS, M.D., | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | |
| ILLINOIS DEPARTMENT OF FINANCIAL | ) | No. 2025CH02275 |
| AND PROFESSIONAL REGULATION, | ) | |
| MARIO TRETO, JR., and CAMILLE LINDSAY, | ) | The Honorable |
| | ) | Cecilia A. Horan, |
| Defendants- Appellees. | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse the final administrative decision of the Illinois Department of Financial and Professional Regulation denying appellant a hearing on the merits of his petition and remand for a hearing.

¶ 2    Dr. Demetrios J. Giokaris appeals from the circuit court's order affirming the Department of Financial and Professional Regulation's final administrative decision, which denied him a merits hearing and indefinitely suspended his medical license for failing to report (1) an adverse action taken against him and (2) an investigation arising from the denial of his

application for reinstatement to the Illinois Medicaid Program. We reverse and remand for a hearing on the merits.

¶ 3                                  I. BACKGROUND

¶ 4        Giokaris is an Illinois physician who obtained his medical license in 1983. On four occasions, his Physician and Surgeon License and his Controlled Substance License were suspended for improper prescribing of controlled substances or failing to comply with regulatory requirements. In 1996, he withdrew from participation in the Medicaid Program. He applied for reinstatement on April 6, 2022.

¶ 5        While that application was pending, the Department filed another administrative complaint alleging that Giokaris certified causes of death without verifying the accuracy of the diagnoses. He and the Department entered a consent order imposing a 30-day suspension, indefinite probation for at least three years, a $5,000 fine, CME requirements, and monitoring. Sections C(iv) and C(v) of the consent order required Giokaris to notify the Department within 10 days of "any adverse action" against him related to the practice of medicine and any "investigation" initiated by another entity. Under section L, if the Director imposed a summary indefinite suspension for violating the order, Giokaris would be afforded a hearing on the merits within 30 days if he filed a written petition within 30 days contesting the factual basis for that suspension.

¶ 6        On October 18, 2024, the Illinois Department of Health and Family Services Office of the Inspector General (IDHFS/OIG) denied Giokaris's Medicaid reinstatement application after the Medical Quality Review Committee (MQRC) found his medical care exceeded patient needs, was of grossly inferior quality, and posed a risk of harm. Giokaris received the denial letter on or

about October 29, 2024, and requested an administrative hearing on the denial of his application. That appeal is still pending and not before us.

¶ 7        On December 5, 2024, Camille Lindsay, Acting Director of the Division of Professional Regulation, indefinitely suspended Giokaris's medical license for a minimum of twelve months for failing to report the Medicaid reinstatement denial and the MQRC review. The suspension relied on an affidavit from Temple Hall of the Probation Compliance Unit stating that both the denial and the underlying MQRC review/investigation were reportable under the consent order.

¶ 8        Giokaris timely filed a petition to contest the suspension and requested a hearing under section L of the consent order. Giokaris argued that Hall's affidavit was so conclusory and devoid of factual detail that it failed to establish a violation, and that Hall did not aver he was ever notified of the denial or the MQRC investigation. He also contended that the MQRC review did not constitute an investigation, the denial of his reinstatement application was not an adverse action related to his practice of medicine, and the sanction imposed was disproportionate.

¶ 9        A formal hearing was scheduled for January 23, 2025. After submission of witness and exhibit lists, Giokaris sought issuance of subpoenas. The Department opposed most requests as irrelevant, and, on January 17, 2025, the Administrative Law Judge (ALJ) denied them. In accordance with administrative procedures, Giokaris requested a second hearing regarding the issuance of the subpoenas to be held before a different ALJ. The initial ALJ granted this request and struck the hearing on the petition. The hearing on the subpoenas took place on January 23, 2025, which was the date originally scheduled for the petition hearing. During this hearing, Giokaris's counsel acknowledged that Giokaris received the IDHFS/OIG denial letter on or about October 29, 2024, and was aware of MQRC's probe into his medical practice. The ALJ and counsel for the Department suggested this admission eliminated all factual disputes raised in

Giokaris's petition and questioned whether a hearing on the merits was even necessary. Nonetheless, a hearing was still contemplated at that point. However, to remain timely under the consent order, it would have had to be held on or before January 29, 2025. After hearing argument on the subpoenas on January 23, the ALJ took the matter under advisement and set a status date of January 27, 2025.

¶ 10    On January 23, 2025, with the 30-day deadline approaching, Giokaris filed a motion to reschedule the hearing for a date on or before January 29. The Department filed a response on January 27, arguing that Giokaris should not be afforded a hearing. The Department contended that because Giokaris had admitted to the relevant facts, there was no longer a factual basis to contest the summary suspension, rendering his remaining arguments purely legal in nature. That same day, the ALJ ruled on the subpoenas, denying several of Giokaris's requests but allowing a subpoena for Hall, who appeared on the Department's witness list. Consequently, as of January 27, a hearing was still anticipated, although a specific date had not yet been established.

¶ 11    However, on January 28, one day before the 30-day period elapsed, the ALJ entered an order denying Giokaris's motion to reschedule. The ALJ agreed with the Department's position that there were no factual matters in dispute and proceeded to rule on the petition. The ALJ found that Giokaris violated the consent order by not reporting the MQRC review/investigation and Medicaid application denial as an adverse action. Accordingly, it denied his request for a merits hearing, denied his petition contesting the suspension, and removed the matter from the call.

¶ 12    Giokaris sought administrative review in the circuit court, asserting breach of section L, due process violations, and erroneous statutory interpretation. The circuit court affirmed the ALJ's decision, finding that Giokaris received the denial letter, did not report it, and that the

denial constituted an adverse action under the consent order. The court found it unnecessary to reach arguments regarding whether an investigation occurred. Giokaris appeals.

¶ 13                                    II. STANDARD OF REVIEW

¶ 14        On administrative review from a final order, this court reviews the Department's decision, not the circuit court's. *Nwaokocha v. Illinois Department of Financial & Professional Regulation*, 2018 IL App (1st) 162614, ¶ 51. The standard of review depends on whether the issue concerns fact, law, or a mixed question. Legal questions are reviewed *de novo. Magnus v. Department of Professional Regulation*, 359 Ill. App. 3d 773, 785 (2005). Consent decrees are treated as contracts, and their interpretation is also reviewed *de novo. Allied Asphalt Paving Co. v. Village of Hillsdale*, 314 Ill. App. 3d 138, 144 (2000); *My Baps Construction Corp. v. City of Chicago*, 2017 IL App (1st) 161020, ¶ 71. However, mixed questions of law and fact, where an agency applies legal standards to established facts, are reviewed under the clearly erroneous standard. *City of Belvidere v. Illinois State Labor Relations Board.*, 181 Ill. 2d 191, 205 (1998). Under this standard, we will overturn an agency's decision only when we are " 'left with the definite and firm conviction that a mistake has been committed.' " *Parikh v. Division of Professional Regulation of the Department of Financial & Professional Regulation*, 2014 IL App (1st) 123319, ¶ 30 (quoting *AFM Messenger Serv., Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001)).

¶ 15                                        III. ANALYSIS

¶ 16        Section L of the consent order gives the Director authority to impose a summary, indefinite suspension for any violation of its terms and conditions. It also provides that if Giokaris contests the factual basis of the infinite suspension in writing within 30 days, a hearing on the merits shall be provided within 30 days of that filing.

¶ 17    Although Giokaris timely petitioned, the ALJ found he ultimately admitted all facts underlying the suspension, and once these admissions were made, no factual questions were left to trigger a merits hearing under section L. Rather, Giokaris's remaining arguments challenged only the Department's interpretation of "any adverse action" and "investigation," the sufficiency of Hall's affidavit, and the propriety and gravity of the suspension, not the underlying facts.

¶ 18    A valid argument may be made that section L does not require a merits hearing in circumstances where Giokaris did not challenge the factual basis underlying the suspension. However, our review of the record reveals that Giokaris was unfairly deprived of a hearing at the very last second without a true opportunity to contest it and fully present the merits of his petition, whether fact-based or legal. Under these circumstances, and given the significant property right at stake, it was an error for the ALJ to strip him of this right without adequate warning. Indeed, we find the Department's decision to take such a position highly suspect.

¶ 19    The timing of the deprivation and the facts leading up to it are significant. Under the consent order, Giokaris was entitled to a merits hearing within 30 days of requesting one, which in this case was January 29, 2025. The ALJ scheduled the hearing for January 23. Witness lists were exchanged, and Giokaris sought discovery and the issuance of subpoenas. On January 17, his request was denied, and he validly exercised his right to seek a second ruling from a different ALJ. The first ALJ could have kept the January 23 hearing in place for the merits hearing. Instead, the ALJ struck that hearing to make way for a hearing on the subpoenas.

¶ 20    This forced Giokaris to file a motion to reschedule the merits hearing to ensure he was afforded one by the January 29 deadline. Four days later, on January 27, the Department, for the first time, objected to holding a hearing on the grounds that Giokaris had acknowledged pertinent facts raised in the petition. Up until January 27, all parties anticipated that a hearing would occur,

and Giokaris had even been granted a subpoena for Hall, the Department's main witness. The following day, however, the ALJ issued an order without the benefit of oral argument, denying the motion to reschedule the hearing – a hearing that had been stricken solely for logistical reasons – and ruled on the merits of the petition. This ruling occurred without fair warning and within 24 hours of the deadline to conduct the hearing. This sequence of events is questionable on its face and is something we cannot countenance.

¶ 21    We express no opinion on the merits of Giokaris's petition, but we hold that due process and fundamental fairness require a full opportunity for him to present his case regarding the alleged violations of the consent order and the resulting summary suspension. Moving forward, the implementation of more robust procedural safeguards is essential to ensure that license holders are afforded a fair opportunity to be heard, especially when the stakes are so significant and the consequences of summary suspension of a medical license are so grave.

¶ 22    IV. CONCLUSION

¶ 23    For the reasons stated, the circuit court of Cook County's order and the Department's final administrative decision are reversed, and this cause is remanded for a hearing on the merits regarding Giokaris's petition to challenge his medical license suspension, to be held within 30 days of the issuance of the appellate mandate.

¶ 24    Reversed and remanded.